# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

BRENDA MOREHEAD

VERSUS

CAROLYN W. COLVIN, ACTING
COMMISSIONER OF SOCIAL SECURITY

CIVIL ACTION

NO. 16-386-RLB[1]

## RULING AND ORDER DISMISSING SOCIAL SECURITY APPEAL

Brenda Morehead ("Plaintiff") seeks judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. § 405(g) denying Plaintiff's application for Disability Insurance Benefits under the Social Security Act. (R. Doc. 1). Having found all of the procedural prerequisites met (Tr. 1-4), the Court has properly reviewed Plaintiff's appeal. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 404.981 ("The Appeals Council's decision, or the decision of the administrative law judge if the request for review is denied, is binding unless you… file an action in Federal district court…"). For the reasons given below, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

## I.     PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits and supplemental security income on August 23, 2013 alleging that she became disabled on January 4, 2011 because of a disabling condition, namely neck and back problems, asthma, panic attacks, anxiety, and

---

[1] Because both parties consented to proceed before a United States Magistrate Judge (R. Doc. 8), the case was transferred to this Court for all further proceedings and entry of judgment pursuant to 28 U.S.C. § 636(c)(1).

peptostreptococcus infection (Tr. 157).  Plaintiff's application was denied by an Administrative Law Judge ("ALJ"), who first held an administrative hearing (Tr. 28-58) before issuing an unfavorable decision on December 3, 2014. (Tr. 12-27).  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on April 26, 2016. (Tr. 1-4).  The ALJ's decision rested as the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. *See* 20 C.F.R. § 404.981.

## II. STANDARD OF REVIEW

This Court's review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994); *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990).  Substantial evidence has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. of N.Y. v. N.L.R.B.*, 305 U.S. 197, 229 (1938) (defining "substantial evidence" in the context of the National Labor Relations Act, 29 U.S.C. § 160(e)).  The Fifth Circuit has further held that substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) (quotations omitted).  Conflicts in the evidence are for the Commissioner "and not the courts to resolve." *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The Court may not reweigh the evidence, try the case *de novo*, or substitute its own judgment for that of the Commissioner even if it finds that the evidence preponderates against the Commissioner's decision. *See, e.g.,*

*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994) ("This is so because substantial evidence is less than a preponderance but more than a scintilla."); *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988) ("In applying the substantial evidence standard, we must carefully scrutinize the record to determine if, in fact, such evidence is present; at the same time, however, we may neither reweigh the evidence in the record nor substitute our judgment for the Secretary's."); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988) (same).

If the Commissioner's decision is supported by substantial evidence, then it is conclusive and must be upheld. *Estate of Morris v. Shalala*, 207 F.3d 744, 745 (5th Cir. 2000). If, on the other hand, the Commissioner fails to apply the correct legal standards, or fails to provide a reviewing court with a sufficient basis to determine that the correct legal principles were followed, it is grounds for reversal. *Bradley v. Bowen*, 809 F.2d 1054, 1057 (5th Cir. 1987).

## III. ALJ'S DETERMINATION

In determining disability, the Commissioner (through an ALJ) works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant throughout the first four steps of this five-step process to prove disability. If the claimant is successful in sustaining his or her burden at each of the first four steps, the burden shifts to the Commissioner at step five. *See Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991) (explaining the five-step process). First, the claimant must prove he is not currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove his or her impairment is "severe" in that it "significantly limits your physical or mental ability to do basic work activities…" 20 C.F.R. § 404.1520(c). At step three, the ALJ must conclude the claimant is disabled if he proves that his or her impairments meet or are medically equivalent to one of the impairments contained in the Listing of Impairments. *See* 20 C.F.R. § 404.1520(d) (step three of

sequential process); 20 C.F.R. pt. 404, subpt. P, app'x 1 (Listing of Impairments). Fourth, the claimant bears the burden of proving he is incapable of meeting the physical and mental demands of his or her past relevant work. 20 C.F.R. § 404.1520(f).

If the claimant is successful at all four of the preceding steps then the burden shifts to the Commissioner to prove, considering the claimant's residual functional capacity, age, education and past work experience, that he or she is capable of performing other work. 20 C.F.R § 404.1520(g)(1). If the Commissioner proves other work exists which the claimant can perform, the claimant is given the chance to prove that he or she cannot, in fact, perform that work. *Muse*, 925 F.2d at 789.

Here, the ALJ made the following determinations:

1. Plaintiff had met the insured status requirements of the Social Security Act through December 31, 2017.

2. Plaintiff had not engaged in substantial gainful activity since January 4, 2011.

3. Plaintiff suffered from the following severe impairments: residual effects of cervical and lumbar surgery, asthma/chronic bronchitis, depression, and anxiety.

4. Plaintiff did not meet or medically equal any listed impairment.

5. Plaintiff retained the residual functional capacity to perform sedentary work, except she is able to lift-carry 10 pounds occasionally, 5 pounds frequently; she is precluded from doing overhead work or work involving extreme range of motion of the neck; she is limited to only occasional interaction with the public and working with things, rather than people.

6. Plaintiff was unable to perform any past relevant work.

7. Plaintiff was born on February 17, 1968 and was 42 years old, which is defined as a younger individual age 18-49 on the alleged disability onset date.

8. Plaintiff had at least a high school education and was able to communicate in English.

9. Transferability of job skills was not an issue because the determination of disability supports a finding that she was not disabled, whether or not she has transferability of job skills.

10. There are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.

(Tr. 17-22).

## IV. DISCUSSION

Plaintiff raises the following two assignments of error: (1) the ALJ erred in his evaluation of the credibility of Plaintiff's subjective complaints; and (2) the ALJ erred in his determination of Plaintiff's RFC. (R. Doc. 12 at 1).

### A. ALJ's Assessment of Plaintiff's Credibility

Plaintiff first argues that the ALJ did not properly assess and evaluate her credibility. In support of her argument, Plaintiff states, "[t]he ALJ erroneously determined, based upon only his lay intuitions about the medical evidence, that 'no significant limitations [are] noted in the treatment records." (R. Doc. 12 at 11). Summarizing the findings of the ALJ, the Commissioner argues that the ALJ properly performed his duties to "weigh the evidence, resolve conflicts in the evidence, and decide the case." (R. Doc. 14 at 7).

In assessing credibility, the ALJ must consider the entire record, including medical signs and laboratory findings, and statements by the claimant and his or her treating or examining sources concerning the alleged symptoms and their effects. 20 C.F.R. § 404.1529(c)(1). Additionally, the regulations provide a non-exclusive list of factors that the ALJ will consider. *See* 20 C.F.R. § 404.1529(c) (2011).[2] However, the ALJ "is *not* required to mechanically follow

---

[2] These factors include:
    (i) Your daily activities;
    (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
    (iii) Precipitating and aggravating factors;

5

every guiding regulatory factor in articulating reasons for denying claims or weighing credibility." *Clary v. Barnhard*, 214 Fed. App'x 479, 482 (5th Cir. 2007) (citing *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994)).

Here, the ALJ began his credibility analysis by fully discussing Plaintiff's testimony (Tr. 20-21), then proceeded by detailing all of the medical evidence of record and explaining the particular evidence that contradicted Plaintiff's allegations. The ALJ ultimately found several reasons why the alleged severity of Plaintiff's symptoms was not wholly credible. (Tr. 21). The ALJ first explained that the "claimant's admitted abilities do not fully support her subjective allegations." (Tr. 21). The ALJ noted that Plaintiff testified that she gets cramps in her legs, has atrophy, has had to go to the emergency room for pain, had post-operative infections, does not walk very far, gets a burning sensation if she sits for a period of time and has to shift positions, uses a heating pad and Fentanyl patch along with oxycodone, muscle relaxers, and ibuprofen, lies down during the day, and has anxiety, ADD, panic attacks, and depression. (Tr. 20). The ALJ also noted that Plaintiff continues to smoke cigarettes despite medical advice, is able to feed her dog, help her son with homework, goes grocery shopping but does not handle the bags. (Tr. 20).

Next, the ALJ concluded that the "objective medical evidence does not fully support her subjective allegations." (Tr. 21). In so doing, the ALJ noted that medical records reported that Plaintiff was not forthcoming about her medications, including denying illicit drug use but

---

(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
(v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
(vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and
(vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

6

testing positive for amphetamines, cannabinoids and opiates, her symptoms were generally mild or transient and she was discharged in stable condition, and that, although she had a limited range of motion in her cervical and lumbar spine, the consultative examination "does not support significant functional limitations." (Tr. 21). Further, the ALJ noted that there was "no indication her conditions were expected to result in significant functional limitations." (Tr. 21). Finally, the ALJ noted that both the physical and mental consultative examinations did not support significant functional limitations. (Tr. 21).

"It must be remembered that '[t]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (citing *Elzy v. Railroad Retirement Bd.*, 782 F.2d 1223, 1225 (5th Cir. 1986)). Ultimately, the mere existence of pain is not an automatic ground for disability, and subjective evidence of pain does "not take precedence over conflicting medical evidence." *Harper v. Sullivan*, 887 F.2d 92, 96 (5th Cir. 1989). Likewise, an individual's statements regarding pain and other symptoms alone are not conclusive evidence of disability and must be supported by objective evidence of a medical impairment that could reasonably be expected to produce the pain or other symptoms alleged. *Harper*, 887 F.2d at 96 (quoting 42 U.S.C. § 423(d)(5)(A)).

Substantial evidence supports the ALJ's finding with regard to Plaintiff's credibility. While the objective medical evidence supports the existence of pain, there is insufficient objective medical evidence supporting the extent of the pain or resulting limitations. Plaintiff testified that she had lumbar surgery in 2011 and cervical surgery in 2012 as a result of degenerative conditions. (Tr. 35). The objective medical evidence, however, states that the lumbar surgery was performed due to an "MRSA abscess in the epidural space and osteomyelitis

of the L-spine," but further notes it was "secondary to the fact that she has history of IV drug use." (Tr. 403). Plaintiff testified that she does not walk very far because the muscles in her legs cramp up. (Tr. 36). She further stated that she cannot sit for any duration without discomfort. (Tr. 37). Plaintiff testified that she used to walk her dog, but no longer does so, and that she is not able to be as involved in her son's schooling as she used to be as a result of the uncertainty of how she will feel each day. (Tr. 40). She also stated that she tries to do household chores, but not to her satisfaction. (Tr. 43). Plaintiff did report that the Fentanyl patch relieves her pain, though not 100 percent. (Tr. 49).

Despite measurable impairments, there is very little evidence of resulting limitation in function, which further supports the ALJ's finding that Plaintiff was not fully credible based on her admitted abilities. In her Function Report (Tr. 173-179), Plaintiff reports that she provides for her son, and that she is able to dress, bathe, care for her hair, and shave, but with pain and difficulty. (Tr. 174). Plaintiff also reports that she prepares her own meals daily, and does light dusting and cleaning, but takes frequent breaks. (Tr. 175). She additionally reports that she shops in stores for light groceries as needed. (Tr. 176).

Further, on her September 4, 2012 Physical Therapy Initial Evaluation, Plaintiff reported her pain to be a "0" on a scale of 0-10. (Tr. 285). The Evaluation notes that Plaintiff's activity tolerance and motivation were good, her standing tolerance and trunk control were good. (Tr. 285). Plaintiff was noted as independent in rolling in bed, scooting up in bed, supine to sitting, sitting to supine, sitting to standing, stand/pivot, squat/pivot, sliding board, and w/c mobility. (Tr. 285). She walked 300 feet independently, and was noted to be full weight bearing, without an assistive device, with zero deviations, and a smooth gait. (Tr. 285). At the AMG Specialty Hospital on September 11, 2012, where she was being treated for antibiotic therapy, the records

8

reported that Plaintiff "ambulated and [] independent with mobility" insofar as physical therapy was concerned, and "at maximum level of functional independence with no skill required" insofar as occupational therapy was concerned. (Tr. 306). At a September 17, 2012 hospital follow up post-cervical surgery, Dr. Joubert noted that Plaintiff reported that her neck pain was improving and she was doing her own physical therapy. (Tr. 355). Dr. Joubert further noted that Plaintiff ambulated without difficulty, and that her gait was a bit agitated "but appropriate." (Tr. 355). At her one-month follow up, Dr. Joubert noted that Plaintiff stated her leg strength was "ok," but also recorded that Plaintiff was wearing high heels. (Tr. 357). Dr. Joubert went on to note that Plaintiff "ambulates without difficulty, muscle strength symmetrical" and that she "Wore high heels to visit." (Tr. 358).

The ALJ explained that Plaintiff's subjective allegations of pain were not fully credible as they were not supported by her admitted abilities or the objective medical evidence. As the Court previously explained, this finding is substantially supported by the record evidence. Given the objective medical records supporting pain without an attendant limitation in function, coupled with Plaintiff's testimony regarding her abilities, substantial evidence in the record supports the ALJ's credibility determination such that the ALJ's decision will not be reversed on this ground.

**B.    ALJ's RFC Determination**

Plaintiff's second argument is that the ALJ erred in his RFC determination because he "relied completely upon his reading of the medical records." (R. Doc. 12 at 12). In support of her argument, Plaintiff suggests that the ALJ failed to refer to a functional analysis of Plaintiff's physical capabilities performed by a treating or examining physician, and that the ALJ failed to mention the assessment of the State agency medical consultant. (R. Doc. 12 at 12). The

Commissioner responds that substantial evidence supports the ALJ's RFC determination, which determination the Commissioner asserts is reserved to the administrative body. (R. Doc. 12 at 7-8) (citing 20 C.F.R. § 404.1527(d)(2)).

A reviewing court must defer to the ALJ's decision when substantial evidence supports it, even if the court would reach a different conclusion based on the evidence in the record. *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). The court "may only scrutinize the record" and take into account whatever fairly detracts from the substantiality of the evidence supporting the ALJ's decision. *Leggett*, 67 F.3d at 564. Accordingly, a "no substantial evidence" finding is appropriate only if there is a conspicuous absence of credible evidentiary choices or no contrary medical findings to support the ALJ's decision. *Johnson*, 864 F.2d at 343-44.

The ALJ concluded that the "residual effects of her surgical procedures, as well as her asthma/bronchitis are reasonably expected to limit her to sedentary work." (Tr. 21). He further concluded that her "neck and back issues will likely preclude overhead work or extreme motion of the neck." (Tr. 21-22). The ALJ did not impose any environmental limitations due to Plaintiff's continued refusal to quit smoking, but did account for Plaintiff's mental impairments when he limited Plaintiff to "no more than occasional interaction with the public." (Tr. 22). Based on these conclusions, the ALJ found that Plaintiff had the RFC to perform sedentary work except that she is able to lift/carry 10 pounds occasionally, 5 pounds frequently, she was precluded from doing overhead work or work involving extreme range of motion of the neck, and she was limited to only occasional interaction with the public and working with things, rather than people. (Tr. 19).

In arriving at this RFC, the ALJ stated that he had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based upon the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 19). He further stated that he "also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 19). The ALJ first detailed the Plaintiff's testimony at the administrative hearing regarding her symptoms and her functional abilities. (Tr. 20-21). Next, the ALJ compared the Plaintiff's testimony with relevant portions of the objective medical records, including the physical and mental consultative examinations. (Tr. 21).

Plaintiff first argues that the ALJ committed error in his RFC assessment when he failed to mention the Case Analysis of Dr. Hollis T. Rogers, the State agency medical consultant, in his decision. The ALJ "is responsible for assessing the medical evidence and determining the claimant's residual functional capacity." *Perez v. Heckler*, 777 F.2d 298, 302 (5th Cir. 1985). The ALJ's RFC decision can be supported by substantial evidence even if the ALJ does not specifically discuss all the evidence that supports his or her decision or all the evidence that he or she rejected. *Falco*, 27 F.3d at 163-64. "The claimant's RFC assessment is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record." *Perez v. Barnhart,* 415 F.3d 457, 461–62 (5th Cir.2005). When assessing a claimant's physical and mental abilities, the ALJ first assesses the nature and extent of the claimant's physical and mental limitations and then determines the RFC. 20 C.F.R. § 416.945(b) and (c). A determination of RFC is "based on all of the relevant medical and other evidence" in the record. 20 C.F.R. § 416.945(a)(3).

In a record containing several hundred pages, Dr. Rogers's analyses account for two of those pages. (Tr. 598, 606). In the first, dated November 20, 2013, Dr. Rogers states "not much current mer need ce." (Tr. 598). Dr. Adeboye A. Frances did, in fact, complete a consultative examination of Plaintiff on December 4, 2013. (Tr. 599-603). After that CE, Dr. Rogers provided a second Case Analysis dated January 3, 2014. (Tr. 606). In the second Case Analysis, Dr. Rogers reports only the following: "46 yo normal gait, normal reflex normal str chronic pain no atrophy." (Tr. 606). Presumably, Dr. Rogers's second analysis was submitted with the benefit of review of Dr. Frances's CE, especially considering that his analysis changed from needing a CE to normal despite chronic pain. Dr. Rogers's analysis of Plaintiff being normal despite chronic pain is consistent with the objective medical evidence, providing additional evidence supporting the ALJ's conclusion.

Additionally, Lois Jordan completed a Request for Medical Advice on December 20, 2013, wherein she stated "Claimant had lumbar surgery in 2011 recent mri 2013 show improvement after the surgery. Claimant recent[ly] showed she has no severe impairments." (Tr. 604). This is consistent with Dr. Rogers' second Case Analysis, dated January 3, 2014, wherein he noted that, despite chronic pain, Plaintiff had a normal gait, normal reflex, normal strength, and no atrophy. (Tr. 606). This finding further supports the ALJ's RFC assessment. Accordingly, even were the ALJ to have committed error in not specifically addressing Dr. Rogers's conclusions, such an error would be harmless as Dr. Rogers's conclusions would not change the outcome reached by the ALJ.

Plaintiff next argues that the ALJ committed error in not ordering additional neurological and pulmonary evaluations. (R. Doc. 12 at 13). Plaintiff notes that Dr. Rogers suggested the need for a CE in his November 20, 2013 Case Analysis (Tr. 598), and acknowledges that a CE was

then performed by Dr. Frances on December 4, 2013 (Tr. 599-603), but suggests that the ALJ committed error in not ordering neurosurgical or pulmonary evaluations that were recommended by Dr. Frances. (Tr. 602). However, the ALJ has discretion to order a consultative examination. *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989). *See also Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987) ("The decision to require [a consultative examination] is discretionary."). As the Fifth Circuit noted in the *Jones* decision, "'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is *necessary* to enable the administrative law judge to make the disability decision." *Jones*, 829 F.2d at 526 (citing *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977)).

Even were the ALJ to have fallen short of his duty by not ordering additional testing, Plaintiff makes no showing of prejudice suffered. The only statement in Plaintiff's briefing to potentially be construed as an argument of prejudice suffered is that "Dr. Rogers, the State agency medical consultant, never offered an RFC assessment after recommending further development." (R. Doc. 12 at 13). This statement suggests that, had additional testing been ordered, those opinions should have included an RFC assessment upon which the ALJ should have relied. The determination of a claimant's RFC, however, is within the solve purview of the ALJ. *See Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995) ("Under the regulations and our case law, the determination of residual functional capacity is the sole responsibility of the ALJ.")). Accordingly, Plaintiff's apparent suggestion that she suffered prejudice as a result of Dr. Rogers not offering an RFC assessment after recommending further development is without merit.

Here, the ALJ had sufficient facts before him with which to determine whether Plaintiff was disabled, including the Plaintiff's RFC, such that an additional consultative examination was

not necessary. The record establishes that Plaintiff underwent a surgical lumbar procedure on April 4, 2011 due to "early osteomyelitis" and an epidural abscess that was "fairly minimal" as memorialized in the Operative Reports of Dr. Eiserloh (Tr. 226-231) and Dr. McNeil (Tr. 232-233). Plaintiff subsequently underwent a cervical surgical procedure on August 31, 2012 when she developed a disk space collapse and some angulation with osteomyelitic changes after being placed on long term IV antibiotics. (Tr. 446). Dr. Epps referred Plaintiff for pain management in January of 2013 (Tr. 619), but there is no evidence in the record that Plaintiff followed up with this recommendation. Instead, Plaintiff saw Dr. Lindenmayer, a primary care physician, on multiple occasions after the second surgery from October of 2013 through August of 2014. (Tr. 639-664).[3] Dr. Lindenmayer consistently notes cervical and lumbar postlaminectomy syndrome, but there is no record of any reports of functional limitations of Plaintiff as a result of pain or other impairments. (Tr. 639, 642, 646, 649, 651, 653, 657, 659, 661, 664).

In her September 4, 2012 post-surgical initial evaluation from physical therapy it is noted that Plaintiff was able to do all things independently, reported a pain level of "0," was full weight bearing with no assistive device and a smooth gait. (Tr. 285-86). Several records note that Plaintiff did not use an assistive device and ambulated without difficulty. (Tr. 306, 355, 357, 358, 599). Almost ten months after her cervical surgery, Plaintiff reported "picking up sticks" before she went to the Ochsner emergency department because of an insect bite. (Tr. 565). A Range of Motion analysis was completed on November 10, 2011, which shows only slightly decreased ranges of motion in the lumbar spine and part of the cervical spine, with all else being normal. (Tr. 257). In his December 4, 2013 Range of Motion Chart, Dr. Frances also notes abnormalities in Plaintiff's cervical and lumbar ranges of motion, with all else being normal. (Tr.

---

[3] At the administrative hearing, the ALJ asked Plaintiff whether Dr. Lindenmayer was a pain doctor, to which Plaintiff stated, "No, he's just my primary care doctor." (Tr. 39).

14

603). The ALJ accounted for this limitation in his RFC, which precluded Plaintiff from doing overhead work or work involving extreme range of motion of the neck. (Tr. 19).

Dr. Lindenmayer also records diagnoses of anxiety and ADHD. (Tr. 639, 642, 646, 649, 651, 653, 657, 659, 661, 664). As noted by the State agency consultant, however, Plaintiff "is able to perform daily acclivities with taking medication for anxiety." (Tr. 610). Plaintiff also stated that she's "not depressed as long as [she takes her] medication." (Tr. 45). The ALJ's RFC limited Plaintiff to only occasional interaction with the public and working with things, rather than people. (Tr. 19). There is a dearth of evidence reflecting any functional limitations as a result of anxiety, depression, or ADHD.

Lastly, Plaintiff broadly argues that the ALJ's RFC assessment "is based solely upon his lay reading of the medical evidence of record, in which he picked and chose only evidence that supported his position." (R. Doc. 12 at 13). This Court's review of the record as detailed above, however, indicates the existence of substantial evidence supporting the ALJ's RFC determination, regardless of the particular portions of the record the ALJ referenced in his decision. Faced with a similar argument, the Fifth Circuit in *Taylor v. Astrue*, 706 F.3d 600, 602-03 (5th Cir. 2012), disagreed with the plaintiff, stating, "[t]he record indicates that the ALJ used the medical information provided by Taylor to determine the plaintiff's residual functional capacity for work… What Taylor characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work."

The same is true here. An ALJ is not required to cite every piece of evidence before him, and his failure to do so does not necessitate a conclusion that an ALJ committed error. In *Williams v. Astrue*, 2012 WL 2023361, at *10 (E.D. La. May 15, 2012), *report and recommendation adopted*, 2012 WL 2023336 (E.D. La. June 5, 2012), for example, the plaintiff

argued that the ALJ failed to incorporate all of his functional limitations into the RFC assessment. Holding that "the ALJ's summary of the medical evidence is substantially correct," the court stated, "[a]lthough the ALJ in her opinion did not mention every medical record that Williams cites, she is not required to do so." *Williams*, 2012 WL 2023361 at *10 (citing *Hammond v. Barnhart*, 124 Fed. App'x 847, 851 (5th Cir. 2005) ("The ALJ's failure to mention a particular piece of evidence does not necessarily mean that [s]he failed to consider it, and the ALJ's decision states explicitly that [s]he considered the entire record in [her] decision."). Put another way, the particular evidence cited in an ALJ's decision is not indicative of the universe of evidence considered by an ALJ.

Here, the ALJ appropriately notes that he "has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based upon the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 19). He further stated that he "also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p." (Tr. 19). This is sufficient and substantial evidence supports the ALJ's RFC assessment such that the ALJ's decision will not be overturned on this ground.

## V. CONCLUSION

For the reasons given above, the Court **ORDERS** that the decision of the Commissioner be **AFFIRMED** and Plaintiff's appeal be **DISMISSED with prejudice**.

Signed in Baton Rouge, Louisiana, on August 14, 2017.

_____
    **RICHARD L. BOURGEOIS, JR.**
    **UNITED STATES MAGISTRATE JUDGE**